IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


MCWILLIAMS, MURPHY AND            )
ASSOCIATES, INC., d/b/a PARSON-    )
BISHOP PHYSICIANS' SERVICES and    )
PARSON-BISHOP NATIONAL COLLECTIONS,)
                                   )
            Plaintiffs,            )
                                   )
       v.                          )   1:08CV361
                                   )
HEART AND VASCULAR CLINIC OF       )
NORTHERN COLORADO, P.C.,           )
                                   )
            Defendant.             )


**MEMORANDUM OPINION AND RECOMMENDATION OF MAGISTRATE JUDGE ELIASON**

   Both parties agree that the claims in the present lawsuit arise from a written contract between them.  Under that contract, Plaintiffs agreed to perform patient billing and third-party collection services for Defendant's medical practice on a commission basis.  In January 2008, a dispute arose between the parties, and Defendant ultimately sought to terminate the contract.  Plaintiffs, in turn, requested full payment of all commissions due for their services.  Defendant not only denied the claim, but also informed Plaintiffs' bank, Branch Banking and Trust ("BB&T"), via letter that Defendant planned to file a lawsuit against Plaintiffs.  The letter further instructed BB&T to freeze Plaintiffs' account until such time as the lawsuit resolved ownership of the account funds.

   Following the freezing of their account, Plaintiffs filed the present action in the Superior Court of Moore County, North

Carolina, alleging breach of contract and conversion. Defendant, a Colorado corporation, subsequently removed the case to this Court based on diversity of citizenship pursuant to 28 U.S.C. § 1441(a). It also filed both a counterclaim alleging breach of contract and constructive fraud.

Both parties have filed motions which are presently before the Court. First, Defendant seeks to dismiss Plaintiffs' conversion claim pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs, for their part, seek somewhat incongruously to both dismiss the entire action pursuant to Rule 12(b)(3) and to remand the case to state court, presumably pursuant to 28 U.S.C. § 1446. Because the outcome of Plaintiffs' motion potentially could render Defendant's motion moot, the Court will first address the issue of remand.

The motion to remand is based on the terms of the parties' agreement. This agreement contains a forum selection clause, which provides, in relevant part, that:

> The laws of the state of North Carolina will govern this agreement. At [Plaintiff's] option, any dispute under this agreement shall either be submitted to binding arbitration in the city of Carthage, North Carolina, under the rules then prevailing of the American Arbitration Association, or filed in North Carolina State Court, to which [Plaintiff] submits to jurisdiction.

Plaintiffs contend that this language requires the parties to litigate all of their controversies in the North Carolina state courts and, thus, it was improper for Defendant to remove the action filed in state court to federal court.

-2-

## Discussion

As a general rule, under federal law, forum selection clauses are prima facie valid and enjoy a presumption of validity. <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1 (1972); <u>Allen v. Lloyd's of London</u>, 94 F.3d 923, 928 (4th Cir. 1996). The same is true under state law. <u>Perkins v. CCH Computax, Inc.</u>, 333 N.C. 140, 145, 423 S.E.2d 780, 783-784 (1992). Both parties have implicitly assumed that federal law controls the decision in this case. However, as pointed out in the Recommendation in <u>John W. Daniel & Company, Inc. v. Alamance County, North Carolina, et al.</u>, No. 1:06CV01096 (M.D.N.C. Sept. 11, 2007), that is not yet certain. But, the answer in this case, as there, would be the same in any event.

The question here concerns the meaning to be given to the contract terms. As explained in <u>John W. Daniel & Company</u>, No. 1:06CV01096, at 4:

> Parties often include clauses in contracts regulating how and where any disputes will be resolved. As summarized by the court in <u>Mark Group Intern., Inc. v. Still</u>, 151 N.C. App. 565, 566 S.E.2d 160 (2002), the three most common are:
>
> > <u>1) a choice of law provision</u>, which names a particular state and provides that the substantive laws of that jurisdiction will be used to determine the validity and construction of the contract, regardless of any conflicts between the laws of the named state and the state in which the case is litigated; <u>2) a consent to jurisdiction provision</u>, which concerns the submission of a party or parties to a named court or state for the exercise of personal jurisdiction over the party or parties consenting thereto. By consenting to the jurisdiction of a particular court or state, the contracting party

-3-

>             authorizes that court or state to act against
>             him; and <u>3) a forum selection provision</u>, which
>             goes one step further than a consent to
>             jurisdiction provision by designating a
>             particular state or court as the jurisdiction
>             in which the parties will litigate disputes
>             arising out of the contract and their
>             contractual relationship. <u>See</u> <u>Johnston County
>             v. R.N. Rouse & Co., Inc.</u>, 331 N.C. 88, 92-93,
>             414 S.E.2d at 30, 33 (1992); <u>Corbin Russwin,
>             Inc. v. Alexander's Hardware, Inc.</u>, 147
>             N.C.App. 722, 726-27, 556 S.E.2d 592, 596
>             (2001)("To summarize, a forum selection clause
>             designates the venue, a consent to
>             jurisdiction clause waives personal
>             jurisdiction and venue, and a choice of law
>             clause designates the law to be applied.").

<u>Id.</u> at 566-567, 161-162 (emphasis added).

In this case, the contract contains both a choice of law and consent to jurisdiction provision. And, while it also contains a forum selection clause, that clause is permissive rather than mandatory, and only allows the parties to litigate in state court, but does not require it. <u>See</u> <u>S & D Coffee, Inc. v. GEI Autowrappers</u>, 995 F. Supp. 607, 610 (M.D.N.C. 1997).

Forum selection clauses are deemed permissive when they merely consent to jurisdiction and empower a court to hear the litigation. In effect, they merely waive any objection to personal jurisdiction in a particular venue. <u>Id.</u> In order to constitute a mandatory forum selection clause, words must be used which have some compulsory or obligatory language directing that the disputes will be resolved in a particular court or court system. <u>See</u> <u>Lauro Lines S.R.L. v. Chasser</u>, 490 U.S. 495 (1989); <u>Sterling Forest Associates, Ltd. v. Barnett-Range Corp.</u>, 840 F.2d 249, 251-252 (4th Cir. 1988). For example, clauses indicating that all actions <u>shall</u> or <u>must</u> be

-4-

brought within a particular county or state are often interpreted to be mandatory ones.  K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW"), 314 F.3d 494, 500 (10th Cir. 2002)(collecting cases); Kerobo V. Southwestern Clean Fuels, Corp., 285 F.3d 531 (6th Cir. 2002); Phillips v. Audio Active Ltd., 494 F.3d 378 (2d Cir. 2007); Korean Press Agency, Inc. v. Yonhap News Agency, 421 F. Supp. 2d 775 (S.D.N.Y. 2006).  However, the mere inclusion of the term "shall" is not determinative.  Although the term "shall" is itself mandatory, "'some further language indicating the parties' intent to make jurisdiction exclusive'" is required to make a forum selection clause a mandatory one.  S & D Coffee, 995 F. Supp. at 610 (quoting Docksider, Ltd. v. Sea Technology, Ltd., 875 F.2d 762, 764 (9th Cir. 1989)).

At first blush, it might seem that the forum selection clause in the present case contains words indicating that exclusive jurisdiction rests in the North Carolina courts.  The clause states that the parties have only two choices should a dispute arise: submit to arbitration or file in state court.  Because the case was filed in state court, only that term is relevant for further discussion.

The problem with the term "filed" is that it admits to ambiguity, especially for a case which is subject to removal to federal court, such as this one.  Global Satellite Communication Co. v. Starmill U.K. Ltd., 378 F.3d 1269 (11th Cir. 2004).  Nothing in the contract requires that the case could not be removed to

-5-

federal court.  Id.  Some courts even require that any waiver of removal be clear and unequivocal.  Regis Associates v. Rank Hotels (Management) Ltd., 894 F.2d 193, 195 (6th Cir. 1990).  Others merely require that the waiver be clear, taking into account all of the contract's terms.  Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207 (3d Cir. 1991).  Here, however, the clause meets neither test.  As Defendant points out, there is no additional provision requiring that a lawsuit be maintained in the North Carolina courts once filed there.  This could have been accomplished even indirectly or implicitly had the clause required that the dispute be decided, resolved, or settled by the North Carolina state courts or, better yet, that removal or transfer is forbidden.  Ocwen Orlando Holdings Corp. v. Harvard Property Trust, LLC, 526 F.3d 1379 (11th Cir. 2008); see generally Mark Group Intern., Inc. v. Still, 151 N.C. App. 565, 566 S.E.2d 160 (2002).  But, the clause does not say this.  It merely states that any lawsuit must be filed in state court.  The clause leaves it to vague implication that only a North Carolina state court must resolve any lawsuit.  That is not sufficient for the following reasons.

The ambiguity inherent in the clause is that it does not explicitly require that a lawsuit under the parties' contract must be maintained or resolved in North Carolina state court.  It merely requires filing there.  Global, 378 F.3d 1269.  The general rule in contract construction is that ambiguities must be resolved against the drafters of the contract in question, in this case, the Plaintiffs.  Id.; Novacare Orthotics & Prosthetics East, Inc. v.

-6-

Speelman, 137 N.C. App. 471, 476, 528 S.E.2d 918, 921 (2000)("when an ambiguity is present in a written instrument, the court is to construe the ambiguity against the drafter--the party responsible for choosing the questionable language"). Applying this principle, it cannot be said that the contract clause does not allow removal of a case filed in state court. Global, 378 F.3d 1269. Moreover, this result does not, in any way, interfere with other provisions in the clause, such as the choice of law provision, inasmuch as this Court may and can apply North Carolina law to the pending state law claims.

Having resolved this issue, the Court now turns to Defendant's motion to dismiss Plaintiffs' conversion claim. The standard for a motion to dismiss pursuant to Rule 12(b)(6) was recently set out in Giarratano v. Johnson, 521 F.3d 298, 302 & 304 (4th Cir. 2008), where the court stated:

> [W]e "take the facts in the light most favorable to the plaintiff," but "we need not accept the legal conclusions drawn from the facts," and "we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir.2000); see also Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003). Additionally, the complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, ____ U.S. ____, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (emphasis added).
>
> . . .
>
> The conclusion that dismissal is appropriate comports with Twombly, ___ U.S. ____, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), [when the pleadings do not disclose] "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. In Twombly, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels

-7-

and conclusions, and a formulaic recitation of the elements of a cause of action will not do," id. at 1964-65, upheld the dismissal of a complaint where the plaintiffs did not "nudge [ ] their claims across the line from conceivable to plausible." Id. at 1974.

Here, Defendant argues that Plaintiffs allege insufficient facts to support their claim for conversion. Namely, Defendant claims that Plaintiffs (1) fail to allege that Defendant exercised any dominion, control, or rights of ownership over the funds in the BB&T account, (2) fail to allege any interference serious enough to justify a conversion claim, and (3) lack the requisite property rights over the funds in question to properly raise a conversion claim. Plaintiffs did not file a response to Defendant's motion, and instead rely on their motion to dismiss and remand of the entire action as set out above. As a result, the motion is deemed uncontested and may be granted. LR 7.3(k).

Under North Carolina law, "'[c]onversion is defined as: (1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner.'" Eley v. Mid/East Acceptance Corp. of N.C., Inc., 171 N.C. App 368, 371, 614 S.E.2d 555, 558 (2005)(quoting Estate of Graham v. Morrison, 168 N.C. App. 63, 72, 607 S.E.2d 295, 302 (2005)).

> The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner . . . and in consequence it is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from the act. The general rule is that there is no conversion until some act is done which is a denial or violation of the plaintiff's dominion over or rights in the property.

-8-

Case 1:08-cv-00361-TDS-RAE   Document 17   Filed 11/14/08   Page 8 of 10

Lake Mary Ltd. Partnership v. Johnston, 145 N.C. App. 525, 531, 551 S.E.2d 546, 552 (2001)(citations omitted). Thus, the tort of conversion involves two essential elements: ownership by the plaintiff and unauthorized dominion by the defendant. Id.; see also United States v. Whedbee, 964 F.2d 330, 333 (4th Cir. 1992).

Defendant argues that Plaintiffs have not adequately pled either of these elements. Plaintiffs' sole allegation is that Defendant, through its letter to BB&T, caused the bank to freeze an account maintained by Plaintiffs. The letter in question, however, simply informed BB&T that the ownership of the funds in the account was in dispute. It did not assert that Defendant was the true owner of the account or that it had any right to control the funds within it. Instead, it simply requested that BB&T freeze the account until such time as a court could determine ownership, which BB&T then did. In essence, Plaintiffs must, by necessity, be arguing that Defendant prompted the conversion of funds by BB&T, which is not a party to this action.

The Court has not been directed to any case upholding a cause of action for conversion where one party's request led to the conversion of a plaintiff's property by a third party. The only conversion case law involving third parties addresses the situation where one party, falsely asserting ownership rights, sells the property of another to a third party. See, e.g., Leggett v. Rose, 776 F. Supp. 229, 237 (E.D.N.C. 1991); E.I. Du Pont De Nemours & Co. v. Tomlinson, 296 F. 634 (4th Cir. 1924). That is not the case here. At no time did Defendant exercise any rights of ownership

over the BB&T account or the funds within it.  While Defendant's course of action may have been the reason a third party independently decided to interfere with Plaintiffs' immediate possession of the funds, it does not appear that the course of action falls within the definition of conversion under existing North Carolina law.  In light of this finding, and with no showing by Plaintiffs to the contrary, it is unnecessary to proceed to Defendant's additional arguments in favor of dismissal.

**IT IS THEREFORE RECOMMENDED** that Defendant's motion to dismiss Plaintiffs' conversion claim (docket no. 9) be granted, and that Plaintiffs' motion to dismiss and remand (docket no. 11) be denied.

                                              _____
                                              **United States Magistrate Judge**


November 14, 2008